William R. Hansen, Esq. (WH-9446)
Bernadette McGlynn Reilly (BR-4117)
Thomas J. FitzGerald, Esq. (TF-2426)
LATHROP & GAGE L.C.
230 Park Avenue, Suite 1847
New York, New York 10169
(212) 850-6220

*Attorneys for Defendant*
*Watermaster of America, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
                                  :

APPLIED TECHNOLOGY LIMITED,     :    07 CV 6620 (LTS)
                                    :

              Plaintiff,       :

                                    :

   -against-                    :

WATERMASTER OF AMERICA, INC.,   :

                                    :

            Defendant.     :

                                    :
-------------------------------------------------------x
                                    :

WATERMASTER OF AMERICA, INC.,   :

                                    :

            Counter-Plaintiff,  :

                                    :

   -against-                    :

APPLIED TECHNOLOGY LIMITED,    :
JOHN FETTER and FETTER &        :
HENDERSON, LTD.,             :

                                    :

           Counter-Defendants. :

                                    :
-------------------------------------------------------x

**BRIEF IN OPPOSITION TO MOTION OF PLAINTIFF AND COUNTER-CLAIM
DEFENDANTS TO DISQUALIFY WILLIAM R. HANSEN AND LATHROP &
GAGE L.C. AS ATTORNEYS FOR WATERMASTER OF AMERICA, INC.**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES...................................................................ii

PRELIMINARY STATEMENT..............................................................1

PROCEDURAL BACKGROUND.............................................................1

STATEMENT OF FACTS......................................................................2

ARGUMENT.....................................................................................5

I.      Mr. Hansen And Lathrop & Gage Have No Present Attorney-Client
Relationship With The Plaintiff Or Counterclaim Defendants....................6

      A.     MULTIFIL Trademark........................................................7

      B.     Letter of September 1, 2004..................................................9

II.     Mr. Hansen's Prior Dealing With The Plaintiff Or Counterclaim
Defendants Do Not Require Mr. Hansen's Disqualification......................10

      A.     Former Client Status.........................................................12

      B.     No Substantial Relationship.................................................12

      C.     No Confidential Information (No Privilege)..............................14

III.    Plaintiff's Motion Is A Litigation Tactic...........................................15

      A.     Plaintiff Lay In Wait With Its Motion
Since June 14, 2007..........................................................15

      B.     Mr. Johnson's Letters........................................................16

      C.     Mr. Johnson's Law Firms....................................................17

CONCLUSION..................................................................................18

## TABLE OF AUTHORITIES

**Federal Cases**                                                                        **Page**

*Blue Planet Software, Inc. v. Games Int'l, LLC,*
    331 F. Supp. 2d 273 (S.D.N.Y. 2004)..................................................14

*Community Programs of Westchester Jewish Community Servs. v.*
    *City of Mount Vernon*, 2007 U.S. Dist. LEXIS 37301 (2007)..................13, 14

*Emons Indus., Inc. v. Liberty Mut. Ins. Co.,*
    747 F. Supp. 1079 (S.D.N.Y. 1990)....................................................5

*Evans v. Artek Sys. Corp.,*
    715 F.2d 788 (Fed. Cir. 1983)......................................................5, 6

*Government of India v. Cook Indus., Inc.,*
    569 F.2d 737 (2d Cir. 1978)..................................................5-6, 11, 12

*Hempstead Video, Inc. v. Incorporated Village of Valley Stream,*
    409 F.3d 127 (2d Cir. 2005)..........................................................5

*Leber Assocs., LLC v. Entm't Group Fund, Inc.,*
    2001 U.S. Dist. LEXIS 20352 (S.D.N.Y).......................................5, 7, 9

*Lott v. Morgan Stanley Dean Witter & Co.,*
    2004 U.S. Dist. LEXIS 25682 (S.D.N.Y.).............................................14

*Monaghan v. SZS 33 Assocs., L.P.,*
    1994 U.S. Dist. LEXIS 16054 (S.D.N.Y.)..............................................8

*Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.,*
    325 F. Supp. 2d 270 (S.D.N.Y. 2004)..................................................6

*T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.,*
    113 F. Supp. 256 (S.D.N.Y. 1953)................................................10-11

*Unique Sports Generation, Inc. v. LGH-III, LLC,*
    2005 U.S. Dist. LEXIS 22133, (S.D.N.Y.)............................5, 6, 8, 9, 11, 12

*Vestron, Inc. v. Nat'l Geographic Society,*
    750 F. Supp. 586 (S.D.N.Y. 1990)....................................................12

**Statutes**

22 N.Y.C.R.R. § 1200.24 (2007)……………………………………………………6

22 N.Y.C.R.R. § 1200.27 (2007)……………………………………………………6

37 C.F.R. §2.19 (2007)……………………………………………………………...8

Federal Rules of Evidence (2007)…………………………………………………...7

**Other Authorities**

*Trademark Manual of Examining Procedure (TMEP)* 5th Ed. (2007)………………...8

Defendant and Counterclaim-Plaintiff Watermaster of America, Inc.

("Watermaster") respectfully submits this memorandum of law in opposition to Plaintiff

Applied Technologies, Ltd. (Applied Technologies) and Counterclaim-Defendants Fetter

& Henderson's ("F&H") and John Fetter's motion to disqualify William R. Hansen, Esq.

and the law firm of Lathrop & Gage L.C. ("Lathrop & Gage") from representing

Watermaster in this case.

## PRELIMINARY STATEMENT

As set forth in this Memorandum and in the accompanying affidavits of William

R. Hansen and Rosalie Schink, it will become compellingly clear to the Court that this

motion to disqualify William R. Hansen and the firm of Lathrop & Gage is nothing more

than a litigation ploy.  In contrast to their bullying tactics which baselessly threaten

Grievance Committee complaints and malpractice suits, the Plaintiff/Counterclaim

Defendants' motion presents a weak and meritless attempt at proof, relying on a

conclusory declaration of John Fetter.  Indeed, the motion fails to include the very

documents which are alleged to create the present and past representation claimed by

plaintiff.  Defendant itself has now supplied the documents to the court.

Conceived as a litigation tactic and executed merely to cause defendant to expend

resources just to keep its legal counsel, this motion must be denied.

## PROCEDURAL BACKGROUND

Plaintiff Applied Technology commenced this action by filing a summons and

complaint on June 15, 2007, in the Supreme Court of the State of New York, New York

County and by serving copies of the summons and complaint upon the Office of the

Secretary of State of New York on July 3, 2007.[1]  On July 23, 2007, Defendant filed a

petition with the Clerk of this Court to remove this case to the United States District

Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1141 and 1146.

Since removal to this Court, the Defendant filed an answer to the Complaint on August 1,

2007 and an amended answer to the Complaint on August 20, 2007.  On August 30,

2007, Applied Technologies filed an answer to the Counterclaims against it, and on

September 13, 2007, F&H and Mr. Fetter filed their answer to the counterclaims against

them in the Amended Complaint.  On October 31, 2007, Judge Swain issued an ORDER

OF REFERENCE TO A MAGISTRATE JUDGE for "General Pretrial" including non-

dispositive pretrial motions, of which Plaintiff's present motion is the first.

STATEMENT OF FACTS

In 1986, Mr. Hansen began his representation of Watermaster and Robert Morris.

(Declaration of William R. Hansen ("Hansen Decl.") ¶ 3; Affidavit of Rosalie Schink

("Schink Aff.") ¶ 2.)  Since the passing of Bob Morris in 2006, Mr. Hansen has continued

to represent Watermaster and Watermaster's current President and Owner, Ms. Rosalie

Schink.  (Hansen Decl. ¶ 3.; Schink Aff. ¶ 3.)  As is customary for businesses dealing

with one another on a regular basis, one party will meet from time to time with counsel

for the other party.  Even Mr. Fetter regularly referred to Mr. Hansen as "Bob's lawyer"

in dealings with Watermaster.  (Schink Aff. ¶ 8.)  Only at the request of Mr. Morris did

Mr. Hansen provide any services for Mr. Fetter or any of his companies.  (Hansen Decl. ¶

11; Hansen Decl. Ex. C; Schink Aff. ¶ 6.)  Mr. Hansen has never executed or requested a

retainer or engagement letter to render services to Mr. Fetter or any of Mr. Fetter's

---

[1] Defendant notes that the Plaintiff erroneously states the actual dates of both the filing and service of the summons and complaint in The Supreme Court of the State of New York, New York County.

companies. (Hansen Decl. ¶¶ 15 & 16.) The extent of Mr. Hansen's dealings with Mr.

Fetter are wholly contained within the Plaintiff's motion and merely relate to a trademark

filing with in the United States Patent and Trademark Office ("USPTO") and a referral to

another firm for inquiries related to the emigration by Mr. Fetter and his family to the

United States (Plaintiff Memo.; Dkt. 21.)

   In 1999 Bob Morris asked Mr. Hansen to represent Watermaster's interests with

regard to Mr. Fetter's stated inquiries into emigrating with his family to the United States.

(Hansen Decl. ¶ 8; Schink Aff. ¶ 7.) Mr. Hansen arranged for Mr. Fetter and his wife to

meet with attorneys from the New York Office of the firm McDermott, Will & Emery to

discuss further any issues related to emigration. (Hansen Decl. ¶ 9.) Mr. Hansen's

involvement in Mr. Fetter's inquires related to emigration did not involve the receipt of

any confidential or privileged information by Mr. Hansen. (Hansen Decl. ¶ 9).

Additionally, Mr. Fetter had shared his plans regarding emigration with Bob Morris, the

then President and Owner of Watermaster, against whom Fetter elected to file a law suit.

(Id., Schink Decl. ¶ 3; Schink Aff. Ex. A.)

   In approximately 2001, Bob Morris and Mr. Fetter jointly conceived of and

invented a battery additive composition for which both eventually received a patent (U.S.

Patent 7,147,972). (Hansen Decl. ¶ 12.) Bob Morris directed Mr. Hansen to file a

trademark application for the mark MULTIFIL for use in connection with the patented

battery vitamin additive. (Hansen Decl. ¶ 13.) On June 1, 2004, after successfully

prosecuting the trademark application, a registration was issued for MULTIFIL (U.S.

Reg. No. 2,847,998) for use in connection with commercial battery watering apparatus,

thereby ending Mr. Hansen's power of attorney for the MULTIFIL application. (Hansen

Decl. ¶ 14 & 17.)  When Mr. Hansen moved his practice from Duane Morris, L.L.P. to Lathrop & Gage, L.C. in the months following the registration of the MULTIFIL trademark, as a matter of course, a letter was sent to Mr. Fetter to authorize the release of the completed prosecution file for MULTIFIL from Duane Morris to Mr. Hansen's new firm, Lathrop & Gage.  (Hansen Decl. ¶ 15.)  Mr. Fetter returned the letter to Duane Morris and the completed prosecution file was released.  (See Hansen Decl. Ex. D.)

The Plaintiff has alleged the following against the Defendant Watermaster: 1) damages by breach of contract; 2) breach of the implied covenants of good faith and fair dealing; 3) unjust enrichment; and 4) common law fraud for Defendant's failures to pay Plaintiff for goods sold to Defendant.  (Compl. ¶ 3; Dkt. 1.)  On September 11, 2007, Mr. Johnson, counsel for the Plaintiff, sent a letter to Mr. Hansen stating that Mr. Hansen's prior dealings with the Plaintiff required that Mr. Hansen withdraw from representing Watermaster.  (Hansen Decl. ¶ 19.)  Mr. Hansen subsequently received letters from Mr. Johnson on September 14 and 16 belligerently stating that due to the prosecution of the MULTIFIL trademark and meetings regarding emigration from 1999, Mr. Hansen must withdraw from representing Watermaster against Mr. Fetter.  (Id.; Hansen Decl. Ex. F.) On September 17, 2007 Mr. Hansen responded to Mr. Johnson's purported causes for Mr. Hansen's withdrawal by clarifying some of the information about which Mr. Johnson appeared to be mistaken.  (Id.; Hansen Decl. Ex. G.)

Apparently not persuaded by Mr. Hansen's letter of September 17, on October 5, 2007, Mr. Johnson inquired as to Mr. Hansen's willingness to join in a letter requesting of Judge Swain to convene a pre-motion conference on the issue of Mr. Hansen's representation of Watermaster.  (Hansen Decl. ¶ 21.)  Mr. Hansen and Lathrop & Gage

declined to join in the proposed letter. (Id.) Nearly a month later, the present motion was filed by Plaintiff. (Plaintiff Memo.; Dkt. 21.)

## ARGUMENT

Plaintiff's motion should be denied. If any attorney-client relationship existed between any of the Plaintiffs and Mr. Hansen or any of his prior law firms, such a relationship no longer exists and has not existed for some time. Additionally, the matters in which the Plaintiffs allege Mr. Hansen represented them bear no relationship to the subject matter of the present case, and if they did, Mr. Hansen has never taken possession of any privileged or confidential information of the Plaintiff or Counterclaim Defendants.

"In considering a motion to disqualify counsel, courts attempt to balance 'the need to maintain the highest standards of the profession' against 'a client's right freely to choose his counsel.'" *Unique Sports Generation, Inc. v. LGH-III, LLC*, 2005 U.S. Dist. LEXIS 22133, *41 (S.D.N.Y.) (quoting *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citations omitted)). Although the Court may be guided by the American Bar Association Model Rules of Professional Conduct and the New York Code of Professional Responsibility, the decision to disqualify counsel rests within the purview of the Court. *See Emons Indus., Inc. v. Liberty Mut. Ins. Co.*, 747 F. Supp. 1079, 1082 (S.D.N.Y. 1990).

Motions to disqualify counsel can have a disruptive effect on the conduct of Court proceedings and can also be used as a litigation tactic. *See Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791–92 (citing *Government of India v. Cook Indus., Inc.*, 569 F.2d 737, 739 (2d Cir. 1978)). For this reason, "the moving party bears 'a heavy burden' and must meet 'a high standard of proof' to succeed on such a motion." *Leber Assocs., LLC v. Entm't*

*Group Fund, Inc.*, 2001 U.S. Dist. LEXIS 20352 *11 (S.D.N.Y) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d at 794)). In motions of this nature, Courts may look to the New York Code of Professional Responsibility and Disciplinary Rules 5-105 and 5-108 contained therein. *See Unique Sports Generation, Inc*, 2005 U.S. Dist. LEXIS 22133; *see also Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc.*, 325 F. Supp. 2d 270 (S.D.N.Y. 2004).

Disciplinary Rule 5-105 concerns simultaneous representation and generally prohibits a lawyer from representing a party if "the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment" or affected "by the lawyer's representation of another client." 22 N.Y.C.R.R. § 1200.24 (a), (b) (2007). Disciplinary Rule 5-108 prohibits the representation by an attorney of a person "in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." 22 N.Y.C.R.R. § 1200.27 (a)(1) (2007). Disciplinary Rule 5-108 also prohibits the use of any confidences or secrets learned by an attorney in the course of his prior representation. 22 N.Y.C.R.R. § 1200.27 (a)(2) (2007).

I.   Mr. Hansen And Lathrop & Gage Have No
     Present Attorney-Client Relationship With The
     Plaintiff Or Counterclaim Defendants.

Plaintiff and Counterclaim Defendants allege that they have a current and ongoing attorney-client relationship with Mr. Hansen. (Hamlin Decl. ¶¶ 5-7; Fetter Decl. ¶ 9.) These allegations involve two distinct instances of alleged representation: 1) A trademark application filed by Mr. Hansen on behalf of Applied Technology and 2) a discussion that occurred in September of 1999 about Mr. Fetter's one-time contemplated emigration to the United States from South Africa. (Hamlin Decl. ¶¶ 5-7; Fetter Decl. ¶ 4.)

A.    MULTIFIL Trademark

Plaintiff alleges that Mr. Hansen is the current attorney of record for the trademark MULTIFIL (U.S. Reg. No. 2,847,998).  In support of this allegation, Plaintiff offers a printout from the United States Patent and Trademark Office ("USPTO") website which shows Mr. Hansen as "attorney of record" for the MULTIFIL trademark.[2] (Hamlin Decl. Ex. A.)  Despite the Plaintiff's statements within the declarations supporting its motion and the single document provided in support of its motion related to the MULTIFIL trademark, such statements from interested parties and a solitary printout from the USPTO website do not meet the moving party's "high burden" or "high standard of proof" required to prevail on a motion to disqualify Mr. Hansen.  *Leber Assocs., LLC v. Entm't Group Fund, Inc.*, 2001 U.S. Dist. LEXIS 20352 *11.  Notably, in *Leber Assocs., LLC*, Judge Dolinger accepted that a will and a living trust prepared by the attorney's firm whose disqualification was sought, much like a trademark, are "continuing legal products that may be amended from time to time," but nevertheless decided that an attorney's services in the matter were of a finite nature.  Id. at *16.  Judge Dolinger found further that "Since there is no credible evidence in this case that Mr. Leber returned to the firm for additional work on these or any other legal matters, the record reflects that the attorney-client relationship ended years ago."  Id.  Similarly, upon issuance by the USPTO of the registration for MULTIFIL in 2004, the Plaintiff makes no claim that Mr. Hansen's services or those of his law firm have been requested in any way.

If the Court finds that Plaintiff has established a *prima facie* case that Mr. Hansen's representation of the Plaintiff for purposes of the filing of the MULTIFIL

---

[2] Brian Hamlin, who started at Applied Technologies in April, 2005, has no personal knowledge of *any* facts.  (Hamlin Decl. ¶ 1)  His affidavit improperly seeks to bolster Mr. Fetter's "facts" while he has no independent knowledge.  His declaration has no relevance.  Fed. R. Evid. 402.

trademark is adverse and ongoing, then Defendant, as the non-movant, must show that "there is no actual or apparent conflict in its loyalties or diminution in the vigor of its representation." *Unique Sports Generation, Inc*, 2005 U.S. Dist. LEXIS 22133, *44-45 (citing *Monaghan v. SZS 33 Assocs., L.P.*, 1994 U.S. Dist. LEXIS 16054, *6-7 (S.D.N.Y.)). Defendant believes that Plaintiff has not made a *prima facie* case that Mr. Hansen currently represents any of their interests. However, and if any doubt remains, Mr. Hansen ceased representing the Plaintiff related to the MULTIFIL trademark by operation of law on June 1, 2004. According to the rules of practice before the Trademark Office, "[t]he USPTO considers a power of attorney to end with respect to a particular application when the mark is registered, when ownership changes, or when the application is abandoned." *Trademark Manual of Examining Procedure (TMEP) §* 602.01, 5th Ed. 2007. The Application for the trademark MULTIFIL filed on behalf of Applied Technology was registered by the USPTO upon the Principal Register of Trademarks on June 1, 2004. *Id.* Upon registration of the trademark MULTIFIL, any power of attorney that may have vested with Mr. Hansen ended. *Id.*

At any time since the registration of the MULTIFIL trademark, Mr. Fetter or his duly appointed representative could appoint a new contact related to the MULTIFIL trademark. 37 C.F.R. §2.19(a); TMEP § 602.04.[3] To that end, it is important to note for the Court that Mr. Fetter has initiated a Uniform Domain Name Resolution Proceeding ("UDRP") against the Defendant related to another trademark registration owned by the Plaintiff. (Schink Aff. ¶ 16, Ex. C.) Mr. Fetter is represented by William Sapone, Esq. in

---

[3] 37 C.F.R. §2.19(a) states in full as follows: Authority to represent an applicant, registrant or a party to a proceeding may be revoked at any stage in the proceedings of a case upon written notification to the Director; and when it is revoked, the Office will communicate directly with the applicant, registrant or party to the proceeding, or with the new attorney or domestic representative if one has been appointed. The Office will notify the person affected of the revocation of his or her authorization.

that matter. (Id.) Mr. Sapone, a former law partner of Mr. Hansen's, is a capable trademark practitioner who could accomplish this simple appointment in moments. The Plaintiff has not elected to pursue this route, but instead chose to wait three months to notify Mr. Hansen of its objection to his representation of Watermaster and another month to actually file a motion on the issue. (Schink Aff. ¶ 14.)

B.      Letter of September 1, 2004

Plaintiff also alleges that Mr. Hansen currently represents him pursuant to a letter dated September 1, 2004 and addressed to Mr. Fetter. (Fetter Decl. ¶ 7.) Plaintiffs have not produced this letter for review by the Court. Rather, Plaintiff submits the Declaration of John Fetter, which contains a single paragraph concerning the September 1, 2004 letter. (Id.) That solitary paragraph contains the following sentence in quotation marks which was selectively lifted from the letter: "We would be pleased to continue to represent you after September 1, 2004, as we have done in the past." (Id.) If the Plaintiff is able to quote directly from this letter, the letter must be in Plaintiff's possession. The Plaintiff, nevertheless, elected not to present the letter to the Court for review. On that basis alone, Defendant contends that the Plaintiff has not met its "high burden" or its "high standard of proof" required in matters of disqualification. *Leber Assocs., LLC v. Entm't Group Fund, Inc.*, 2001 U.S. Dist. LEXIS 20352.

If the Court determines that the Plaintiff has established a *prima facie* case that Mr. Hansen is the current attorney for the Plaintiff based upon Mr. Fetter's Declaration regarding the September 1, 2004 letter, then, as in the case of the MULTIFIL trademark, the Defendant must show that there is no actual or apparent conflict created by the representation. *See Unique Sports Generation, Inc,* and *44-45. The September 1, 2004

letter was drafted by Lathrop & Gage and was a form letter sent to any party for whom Mr. Hansen retained a file. (Hansen Decl. ¶ 16, Ex. D). The Plaintiff has also elected not to offer the "consent form" he claims to have returned for review by the Court. (See Fetter Decl. ¶ 7.) This omission is most likely because the "consent form" is in reality a release form meant to be returned to Mr. Hansen's prior firm, Duane Morris. (Hansen Decl. Ex. D.) By Mr. Fetter's signature and return of this letter to Duane Morris he expressly terminated his attorney-client relationship with Duane Morris. (Id.) Even a careful reading of Mr. Fetter's Declaration discloses that the Plaintiff means to imply that this client authorization form was sent to Mr. Hansen as a confirmation of continued representation. Such blatant mischaracterizations and misstatements of the facts before the Court are improper. (Fetter Decl. ¶ 7.) Had the letter been submitted by the Plaintiff for the Court's review, it would have been plain to see. The documents are now appended as Exhibit D to the Hansen Affidavit. (Hansen Decl. Ex. D.)

Subsequent to the September 1, 2004 letter, Plaintiff does not allege any contact at all with Mr. Hansen or his firm. Any lawyer may be pleased to represent a client, whether a past or a future client, but desire does not representation make. Therefore, for the foregoing reasons Defendant submits that no present attorney-client relationship exists between Mr. Hansen and any of the Plaintiffs or Counterclaim Defendants.

II.     Mr. Hansen's Prior Dealings With The Plaintiff
        Or Counterclaim Defendants Do Not
        Require Mr. Hansen's Disqualification

Plaintiff further submits that Mr. Hansen's representation of the Defendant in this matter is prohibited by the test established by this Court and embodied in Judge Weinfield's decision in *T. C. Theatre Corp. v. Warner Bros. Pictures, Inc.*, 113 F. Supp.

256 (S.D.N.Y. 1953).  Under the *T. C. Theatre Corp.* test, which was later codified within

Disciplinary Rule 5-108, an attorney may not represent a client if the movant

demonstrates "(1) that the moving party is a former client of the adverse party's counsel;

(2) that a substantial relationship exists between the subject matter of the counsel's prior

representation of the moving party and the issues in the present lawsuit; *and* (3) that the

attorney whose disqualification is sought had access to, or was likely to have had access

to, relevant privileged information in the course of his prior representation of the client."

*Unique Sports Generation, Inc.*, 2005 U.S. Dist. LEXIS 22133 at *45 (citations omitted).

In *Unique Sports Generation, Inc.* this Court held that in a motion to disqualify opposing

counsel due to successive adverse representation, "the movant bears the heavy burden of

proving that the relationship is 'patently clear'; in other words, the movant must

demonstrate that the issues involved in the prior and present representations were

'identical' or 'essentially the same.'"  *Id.* at *46 (citing *Government of India v. Cook

Industries, Inc.,* 569 F.2d 737, 739-40 (2d Cir. 1978) (internal citations omitted)).

Plaintiff alleges that he is a former client of Mr. Hansen's for the purposes of the

MULTIFIL trademark discussed above and for the purposes of a single meeting that the

Plaintiff allege occurred "on or about September 7, 1999." (Fetter Decl. ¶ 4.)  Though the

Plaintiff alleges that Mr. Hansen was engaged to handle the MULTIFIL trademark

application, no claim whatsoever is advanced by the Plaintiff that the MULTIFIL

trademark is in any way related, substantially or otherwise, to the present litigation.

Neither does the Plaintiff allege that Mr. Hansen came into possession of confidential

information with relation to the MULTIFIL trademark matter.  Therefore, Defendant

submits that for the purposes of the successive representation claims raised by Plaintiff, only the meeting alleged to have occurred on September 7, 1999 needs to be addressed.[4]

A.    Former Client Status

Plaintiff offers certain vague descriptions of contact with Mr. Hansen in 1999. With the alleged letter of September 1, 2004, the Plaintiff describes and characterizes documents in its possession rather than offering those documents in support of its allegations. (Fetter Decl. ¶ 6.) Specifically, the Plaintiffs claims that Mr. Hansen issued a statement for services and that the Plaintiff paid a certain sum to Mr. Hansen at some point following the issuance of that statement. (Id.) What Plaintiff elects to omit from its representations to the Court is that the statement for services of December 21, 1999 was issued to Robert Morris (Watermaster), not to Mr. Fetter. (Hansen Decl. ¶ 11, Ex. B.) This same statement was attached to a letter addressed to Mr. Hansen from opposing counsel and dated September 11, 2007. (Hansen Decl. Ex. F.) Whatever the reason may be that the 1999 Nims Firm statement was not offered by the Plaintiff for the Court's review is unknown, but it likely is because the statement issued to Mr. Morris demonstrates further that Mr. Morris and Watermaster were Mr. Hansen's clients—not Mr. Fetter. (Id.)

B.    No Substantial Relationship

Plaintiff does not sufficiently allege that any substantial relationship exists between any of the past dealings between Mr. Hansen and the Plaintiff. As discussed

---

[4] In may be noted that appropriately to the present case, in its decision in *Unique Sports Generation, Inc.*, this Court cited the example of *Vestron, Inc. v. Nat'l Geographic Society,* 750 F. Supp. 586, 595 (S.D.N.Y. 1990) in which Judge Francis denied the Defendant's disqualification motion because the Defendant "could not establish that a substantial relationship existed between initial litigation, which involved trademark action, and subsequent litigation, which involved breach of contract." *Unique Sports Generation, Inc.* at *46-47 (citing *Vestron, Inc. v. Nat'l Geographic Society,* 750 F. Supp. 586, 595 (S.D.N.Y. 1990)). In the present case, there is no prior *litigation* alleged at all—merely the *prosecution* of a trademark.

herein, the Plaintiff must establish that the relationship of the prior representation to the present case is "patently clear." *Community Programs of Westchester Jewish Community Servs. v. City of Mount Vernon*, 2007 U.S. Dist. LEXIS 37301 *3 (2007) (citing *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739-40 (2d Cir. 1978)). This matter is a litigation stemming from the Plaintiff's claim for breach of contract. Plaintiff does not allege that Mr. Hansen ever represented him in litigation or ever reviewed a contract on the Plaintiff's behalf. The Plaintiff's claims regarding Mr. Hansen's role in "business dealings, tax matters, and 'off shore' business with [the] Defendant" are unsupported by documentary evidence or testimonial evidence of a reliable nature. (Plaintiff's Memo. p. 12; Dkt. 21.)

The Declaration of Mr. Hamlin, the Director of Applied Technologies, contains a single paragraph related to these dealings. (Hamlin Decl. ¶ 9.) That solitary paragraph contains three sentences, each of which begins "I understand from Mr. Fetter..." or some variation thereof. Certainly, a paragraph of hearsay is not sufficient to carry the Plaintiff's burden to demonstrate that the issues in this case are "'identical' or 'essentially the same'" as matters Mr. Hansen may or may not have consulted upon. *Community Programs of Westchester Jewish Community Servs. v. City of Mount Vernon*, 2007 U.S. Dist. LEXIS 37301 at *4.

Mr. Fetter's declaration in support of the present motion is similarly vague regarding the dealings between Mr. Hansen and the Plaintiff. Plaintiff claims by the Declaration of Mr. Fetter that Mr. Hansen provided counsel regarding matters related to the Plaintiff's and Plaintiff's family's contemplated emigration from South Africa to the United States. Mr. Hansen is chiefly an intellectual property attorney and could not opine

13

in any substantial way regarding matters of emigration. (Hansen Decl. ¶ 5.) Therefore,

Mr. Hansen referred Mr. Fetter to the New York offices of McDermott Will & Emery, a

national law firm, for counsel with regard to emigration issues. (Hansen Decl. ¶¶ 8 & 9.)

Plaintiff does not allege any specific connection between his contemplated emigration of

nearly a decade ago and the matters being pressed against the Defendant in the present

litigation. (Plaintiff Memo. p. 12, Dkt. 21)  Therefore, without establishing any

substantial relationship between Mr. Hansen's prior dealings with Mr. Fetter and the

present matter, the Court may deny the motion without further analysis. *Community*

*Programs of Westchester Jewish Community Servs. v. City of Mount Vernon*, 2007 U.S.

Dist. LEXIS 37301 at *4.

      C.     No Confidential Information (No Privilege).

Upon satisfaction of the "substantial relationship" prong of the test under DR 5-

108, "[t]he movant must also demonstrate that the attorney 'at issue had access to, or was

likely to have access to, privileged information in the course of his prior representation.'"

*Lott v. Morgan Stanley Dean Witter & Co.*, 2004 U.S. Dist. LEXIS 25682 *11 (S.D.N.Y.)

(citing *Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 277

(S.D.N.Y. 2004)).  If the Court deems that the Plaintiff has shown that the dealings

between Mr. Hansen and the Plaintiff are substantially related, no confidential

information or secrets were ever placed by the Plaintiff in the possession of Mr. Hansen

or his law firm Lathrop & Gage.

Plaintiff acknowledges in its Memorandum that the subject of any discussion with

Mr. Hansen related to the Plaintiff's *business with Defendant*. (Plaintiff Memo. p. 12.)  It

is untenable that Mr. Hansen would ever have been entrusted with confidences by the

14

Plaintiff which were not also known to the Defendant.  Also, by Declaration, Mr. Fetter states that Mr. Hansen "opined regarding the legality of our various arrangements and dealings with Defendant."  (Fetter Decl. ¶ 4.)  Since the matters Mr. Hansen discussed with Mr. Fetter were known by or shared with Watermaster and Bob Morris, no privilege could have attached.

Plaintiff alleges that the Defendant has already used confidential information in the possession of Mr. Hansen to formulate the Answer and Counterclaims in this matter. (Fetter Decl. ¶ 5; Hamlin Decl. ¶ 9.)  The Defendant's Amended Answer and Counterclaims were constructed from facts and situations known to the Defendant personally.  (Schink Aff. ¶ 13)  Nothing contained in them bespeaks of Mr. Hansen's special knowledge of the Plaintiff's secrets.  More importantly, the plaintiff alleges that these "secrets" were divulged to Mr. Hansen was when Mr. Hansen was acting as attorney for his client Bob Morris and Watermaster.  The December 21, 1999 statement for services, which included the September Fetter meeting, was directed to Bob Morris— not Mr. Fetter or his company.  (Hansen Decl. ¶ 11.)

III.    <u>Plaintiff's Motion Is A Litigation Tactic</u>

For numerous reasons, the Plaintiff's Motion to Disqualify Mr. Hansen as counsel for the Defendant appears to be a tactic meant to delay these proceedings and gain the advantage of removing the Defendant's attorney and trusted adviser of 23 years.

A.    Plaintiff Lay In Wait With Its Motion Since June 14, 2007

As the Defendant in this action, Watermaster, Mr. Hansen's client of more than 20 years, could not dictate to the Plaintiff whether or not to file suit in this matter.  In the months leading up to the Plaintiff's initiation of this action, the parties engaged in an

exchange of correspondence between themselves. (Schink Aff. ¶ 10; Schink Aff. Ex. B.) The Plaintiff was fully aware of Mr. Hansen's involvement in the attempts to reach an accord between the parties. (Schink Aff. ¶ 10.) Plaintiff filed suit against the Defendant on June 15, 2007. (Compl., Dkt. 1.) The very first instance that the matter of Mr. Hansen's involvement with the MULTIFIL trademark was mentioned by the Plaintiff was by his counsel's letter of September 14, 2007, nearly two months after the removal of the complaint in this action was filed. (Hansen Decl. ¶ 19; Hansen Decl. Ex. F.) Defendant has also directed Mr. Hansen to file an answer to the Complaint and Counterclaims as well as to file an amended answer to the Complaint and Counterclaims. (Id.) At the direction of the Defendant, Mr. Hansen has also reviewed the Plaintiff's and Counterclaim Defendants' answers to the counterclaims entered on two separate dates. (Id.)

        B.     Mr. Johnson's Letters

Beginning on September 11, 2007, counsel for Plaintiff began a week-long letter writing campaign, the tone of which was unfortunate. (Hansen Decl. Ex. F.) As an example of the tone adopted by Plaintiff's counsel in these letters, note Mr. Johnson's letter of September 16, 2007, which ends thus: "You may wish to consider placing your carrier on notice."

Also with respect to the Plaintiff's letters to Defendant's counsel, it should be noted that the Plaintiff rests a great deal of its argument for the disqualification of Mr. Hansen upon two documents: 1) a September 1, 2004 letter from Mr. Hansen and Lathrop & Gage; and 2) a December 21, 1999 statement from Mr. Hansen and his prior law firm. (Hamlin Decl. ¶ 9; Fetter Decl. ¶¶ 2 & 6) Considering the great weight the Plaintiff asks

the court to give these items with respect to the Court's decision in this matter, it is telling that these documents were not provided to the Court by the Plaintiff for review and consideration.  Counsel for the Plaintiff appended these two documents to his letters of September 16 & 11, 2007, respectively.  (Hansen Decl. Ex. F.)  The purpose and thrust of Plaintiff's motion, illuminated by the rancor of Mr. Johnson's letters, are confirmed by Plaintiff's deliberate decision to withhold from the Court for purposes of this motion the very two documents upon which Plaintiff bases its spurious motion to disqualify Mr. Hansen.

       C.     Mr. Johnson's Law Firms

      The most alarming aspect of the present motion before the court is that Mr. Johnson is a member of *another* firm that has acted for Watermaster with regard to patent applications.  (Affidavit of the Thomas J. FitzGerald ("FitzGerald Decl.") ¶¶ 3 & 5.)  As recently as March of 2007, the law firm Coleman Sudol Sapone, P.C. ("Coleman Sudol Sapone") has corresponded with the Defendant and abided by instructions from the defendant with regard to patents which are part of the Watermaster business.  (FitzGerald Decl. ¶ 3; FitzGerald Decl. Ex. A.)  Defendant recently received a letter from Coleman Sudol Sapone dated October 25, 2007 (four days before Mr. Johnson filed the present motion) with a new name in the letterhead of the firm—Bruce D. Johnson, listing the New York City Office of Coleman Sudol Sapone as the same street address as Johnson & Associates.  (FitzGerald Decl. ¶ 5; FitzGerald Decl. Ex. B.)  It thus appears that Mr. Johnson represents Mr. Fetter in the present case under the firm name "Johnson & Associates," yet he is now associated in some capacity with a firm responsible for the maintenance of patents integral to the Watermaster business.  (FitzGerald Decl. ¶ 6;

FitzGerald Decl. Ex. C.)  The charges Mr. Johnson has raised against Mr. Hansen are belied by his own actions.  The attempt to disqualify Mr. Hansen cannot be seriously maintained by Mr. Johnson whose own affiliations raise questions today of a conflict of interest.

CONCLUSION

At the heart of a motion to disqualify opposing counsel should be the immediate threat of harm to a party whose lawyer and trusted advisor turns against them with confidences and secrets at the ready.  This is not the present case.

We respectfully request that all matters having been resolved in favor of the Defendant, that the Court deny Plaintiff's Motion to Disqualify Defendant's Counsel and award the Plaintiff whatever relief the Court may deem just and proper.

November 13, 2007

LATHROP & GAGE L.C.

s/William R. Hansen
William R. Hansen (WH 9446)
whansen@lathropgage.com
Bernadette McGlynn Reilly (BR 4117)
breilly@lathropgage.com
Thomas J. FitzGerald (TF 2426)
tfitzgerald@lathropgage.com
LATHROP & GAGE L.C.
230 Park Avenue, Suite 1847
New York, NY 10169
Telephone:  (212) 850-6220
Facsimile:  (212) 850-6221

*Attorneys for Defendant*
*Watermaster of America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of November, 2007, I electronically filed the **BRIEF IN OPPOSITION TO MOTION OF PLAINTIFF AND COUNTER-CLAIM DEFENDANTS TO DISQUALIFY WILLIAM R. HANSEN AND LATHROP & GAGE L.C. AS ATTORNEYS FOR WATERMASTER OF AMERICA, INC.** with the Clerk of the Court by using the CM/ECF system.

I further certify that on the 13th day of November, 2007, I mailed the foregoing document and the notice of electronic filing by first class mail to the following:

> Bruce D. Johnson
> JOHNSON & ASSOCIATES
> 950 Third Avenue
> New York, New York 10022

> s/Thomas J. FitzGerald
> Thomas J. FitzGerald (TF 2426)
> tfitzgerald@lathropgage.com
> LATHROP & GAGE L.C.
> 230 Park Avenue, Suite 1847
> New York, NY 10169
> Telephone:  (212) 850-6220
> Facsimile:  (212) 850-6221
>
> *Attorneys for Defendant*
> *Watermaster of America, Inc.*

NYDOCS 54518v1