UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                      :
APPLIED TECHNOLOGY LIMITED,
                      :
                   Plaintiff,           07 CV 6620 (LTS) (DF)
                      :
    -against-                      **MEMORANDUM**
                      :          **AND ORDER**
WATERMASTER OF AMERICA, INC.,
                      :
                   Defendant.
------------------------------------------------------------------------X
WATERMASTER OF AMERICA, INC.,         :
                 Counter-Plaintiff,  :
    -against-                      :
APPLIED TECHNOLOGY LIMITED,        :
JOHN FETTER and FETTER &
HENDERSON, LTD.,                      :
                 Counter-Defendants.  :
------------------------------------------------------------------------X

**DEBRA FREEMAN, United States Magistrate Judge:**

### INTRODUCTION

In this litigation, referred to me for general pretrial supervision, plaintiff and counterclaim defendant Applied Technology Limited ("Applied Technology"), together with third-party defendants John Fetter ("Fetter") and Fetter & Henderson, Ltd. ("Fetter & Henderson"), move to disqualify counsel for defendant and third-party plaintiff Watermaster of America, Inc. ("Watermaster") because of an alleged conflict of interest.  The counsel in question are Lathop & Gage, L.C. ("Lathrop & Gage") and William R. Hansen, Esq. ("Hansen"), a member of that firm.  For the reasons stated below, the motion for disqualification is DENIED.

1

**BACKGROUND**

This case involves relationships among a supplier (Applied Technology), a seller/distributor (Watermaster), and a manufacturer (Fetter & Henderson) of battery watering materials. Applied Technology commenced the action against Watermaster, alleging claims for breach of contract, account stated, breach of the implied covenants of good faith and fair dealing, unjust enrichment, and common law fraud. (*See* Complaint, dated June 15, 2007 ("Compl."), attached as Ex. A to Petition for Removal, dated July 23, 2007 (Dkt. 1).) Watermaster then asserted a number of counterclaims – including claims for breach of contract, breach of implied warranty, tortious interference with advantageous business relationships, and defamation – and added Fetter & Henderson and its principal, Fetter, as counterclaim defendants. (*See* Amended Answer and Counterclaims of Defendant Watermaster of American, Inc., dated Aug. 20, 2007 ("Am. Answer") (Dkt. 6).)[1]

The pleading of the counterclaims, with the addition of Fetter and his company as third-party defendants, gave rise to the instant motion. According to Applied Technology, Fetter & Henderson, and Fetter (collectively, the "Moving Parties"), they were previously – and, in fact, remain – clients of Watermaster's current counsel, Hansen, and Watermaster's claims against them rely on confidential information imparted to Hansen in the course of his representation of them. The Moving Parties seek to disqualify Hansen and his firm on two alternative grounds: (1) that Hansen currently represents them and they have not consented to his representation of Watermaster, or (2) that Hansen formerly represented them, the subject matter of the pending

---

[1] Watermaster alleges that Fetter is not only a director, officer and shareholder of Fetter & Henderson, but is also a director of Applied Technology (*see* Am. Answer, at ¶ 41), although Fetter denies this last allegation (*see* Reply to Counterclaims Against Counterclaim Defendant John Fetter, dated Sept. 13, 2007 ("Fetter Reply to Counterclaims") (Dkt. 13), at ¶ 2).

case bears a substantial relationship to the prior representation, and Hansen had access to relevant privileged information.  (*See* Brief in Support of Motion of Plaintiff and Counterclaim Defendants to Disqualify Counsel of Record for Defendant, dated Oct. 29, 2007 ("Pl. Mem.") (Dkt. 21), at 5-6.)

There is no question that Hansen represented the Moving Parties in the past (*see* Hansen Decl., at ¶¶ 2, 5-6, 12-14), although whether he currently represents them is disputed, as is the extent and subject matter of any past or current representation.  According to the Moving Parties, Hansen began representing them in 1999, in a patent infringement matter.  (*See* Pl. Mem., at 3-5; Hansen Decl., at ¶¶ 5-14.)  Later that year, Hansen allegedly counseled Fetter in connection with, *inter alia,* Fetter's proposed immigration to the United States and the resulting implications for his businesses.  (*Id*.)  Finally, Hansen is said to have represented the Moving Parties from 2001 to 2004, in a trademark prosecution.  (*Id*.)  As for his representation of Watermaster, on whose behalf Hansen is appearing in this case, it appears that Hansen has represented that company since its formation in 1986.  (*See* undated Declaration of William R. Hansen in Opposition to Motion to Disqualify William R. Hansen and Lathrop & Gage L.C. as Attorneys for Watermaster of America, Inc., filed Nov. 13, 2007 ("Hansen Decl.") (Dkt. 25), at ¶ 3).)

    A.    <u>Hansen's Alleged Representation of the Moving Parties</u>

        1.    <u>Trojan Battery Patent Infringement Matter</u>

Beginning in April 1999, at the request of Robert Morris ("Morris"), then President of Watermaster, Hansen's former law firm, Nims, Howes, Collision, Hansen & Lackert ("Nims, Howes"), represented the Moving Parties in a patent infringement matter.  (*See* Hansen Decl., at ¶ 5; Reply Declaration of John Fetter in Connection with Motion to Disqualify Counsel of Record for Defendant, dated Nov. 17, 2007, ("Fetter Reply Decl.") (Dkt. 29), at ¶ 12.)  The

patent at issue, alleged by Fetter to have been owned by Applied Technology (*see* Fetter Reply Decl., at ¶ 12; *but see also* Hansen Decl., at ¶ 5 (contending that the patent was owned by Fetter)), was purportedly being infringed by a company called Trojan Battery. (*Id.*) The matter was resolved without litigation. (*Id.* at ¶ 6.)

### 2. The 1999 Meetings Regarding Fetter's Potential Immigration To the United States

In September of 1999, a series of meetings took place among Fetter, Fetter's wife, Hansen and several attorneys from the law firm of McDermott, Will & Emery. The subject matter of these meetings included, generally, Fetter's potential plans to immigrate and move his business to the United States. (*See* Pl. Mem., at 3; Hansen Decl., at ¶¶ 8-10.)

The Moving Parties contend that, at these meetings, Hansen counseled Fetter and Fetter & Henderson regarding the legality of various aspects of their "off shore business," including tax matters, business arrangements, and dealings with Watermaster. (*See* Declaration of John Fetter in Connection with Motion to Disqualify Counsel of Record for Defendant, dated Oct. 22, 2007 ("Fetter Decl.") (Dkt. 19), at ¶ 4.) At the Court's request, and so as to elucidate the nature of the claimed privileged information imparted to Hansen by Fetter during those meetings, the Moving Parties have also submitted, *in camera*, an additional declaration of John Fetter, dated Aug. 8, 2008, further discussing the content of the 1999 meetings.

Watermaster, however, contends that Hansen attended the 1999 meetings as counsel to Watermaster (not Fetter), and that Fetter did not reveal to Hansen any confidential plans, other than those concerning his proposed immigration and business plans, which he had already shared with Watermaster's president, Morris. (Hansen Decl., at ¶¶ 9-11.)

In support of their respective arguments on this motion, all parties cite to a billing statement from Hansen's law firm, addressed to Morris. (*See* Hansen Decl., at Ex. B.) The statement, dated December 21, 1999, describes a "meeting with Mr. F[e]tter and his wife, Pamela, general discussion, [a] meeting at McDermott, Will & Emery with Joan Ellen Carpenter regarding immigration issues, notes, conference, [and a] meeting at McDermott . . . regarding tax and business issues relating to becoming U.S. resident." (*See* Hansen Decl., at Ex. B.)

### 3. The MULTIFIL Trademark

Around 2001, Fetter and Morris began a joint venture to undertake development of a battery additive. (Hansen Decl., at ¶ 12.) In connection with this joint venture, Robert Morris sent a letter to Hansen requesting, on behalf of Fetter, that Hansen register the trademark "MULTIFIL" with the United States Patent and Trademark Office ("USPTO"), in the name of Applied Technology. (Hansen Decl, at ¶ 13, Ex. C.) On April 2, 2001, an application was filed in the USPTO to register MULTIFIL as a trademark of Applied Technology, naming Hansen, along with other members of the law firm with which he was then affiliated, as attorneys of record. (Hansen Decl., at ¶ 14.) Registration was issued on June 1, 2004. (Hansen Decl., at ¶ 14; *see also* Declaration of Brian Hamlin in Connection with Motion to Disqualify Counsel of Record for Defendant, dated Oct. 23, 2007, ("Hamlin Decl.") (Dkt. 18), at Ex. A.))

### B. Alleged Continuation of Hansen's Representation

On April 1, 2002, Hansen moved his practice of law to the New York office of Duane Morris, LLP ("Duane Morris"). On or about September 1, 2004, Hansen then sent a letter to Fetter regarding Hansen's move from Duane Morris to another new law firm, Lathrop & Gage. (Hansen Decl. Ex. D.) In the letter, Hansen wrote, "We would be pleased to continue to represent you after September, 1, 2004, as we have in the past. If you agree, please complete the

enclosed letter to Duane Morris LLP instructing them to release your files to Lathrop & Gage." (*Id*.)  Enclosed with the letter was a "Client Authorization for Release of Files," pursuant to which, if signed, Hansen would be authorized to move, from Duane Morris to Lathrop & Gage, any client files Duane Morris held with respect to Fetter.  (*Id*.)  Fetter signed the agreement, "[a]lso for and on behalf of Fetter & Henderson (Pty) Ltd [and] Applied Technology Limited." (*Id*.)

Hansen argues that the September 1 letter was merely a "transfer letter" that did not constitute a retainer or an acceptance of any new work from Fetter and his companies.  (Hansen Decl., at ¶¶ 15-16.)  According to Hansen, as part of his move to Lathrop & Gage, that firm sent letters to all of his present and former clients, as to whom Duane Morris was holding files.  (*Id.*)  Once Fetter executed the authorization, Duane Morris released to Latham & Gage the client files pertaining to the Trojan Battery matter and the MULTIFIL matter.  (*Id*.)

Fetter argues that the September 1 letter, the signed authorization, and the transfer of files to Hansen's new law firm are evidence of Hansen's continued representation of the Moving Parties.  (*See* Fetter Reply Decl., at ¶¶ 20, 22-23.)

## DISCUSSION

In their motion to disqualify Watermaster's counsel, the Moving Parties assert that Hansen should be disqualified from representing Watermaster because Hansen has represented, and continues to represent, Fetter, Fetter & Henderson, and Applied Technology.  (*See* Pl. Mem. at 3.)

Hansen's representation of Fetter and Fetter & Henderson allegedly began in September, 1999, when, over the course of several meetings, Hansen provided or arranged for the provision of legal services with respect to various aspects of Fetter & Henderson's business activities and

6

tax matters, in addition to immigration matters regarding Fetter's proposed relocation to the United States.  (*Id.* at 3-4.)  At these meetings, Hansen allegedly was made party to "privileged and confidential" information, which Fetter alleges is the basis of various allegations contained in Watermaster's counterclaims and third-party claims.  (*Id.* at 3 (citing Am. Answer ¶¶ 41-44, 48-51, 54-56, 58).)

The Moving Parties also contend that Hansen represented Applied Technology in the patent infringement matter against Trojan Battery and in the MULTIFIL trademark registration. Further, the Moving Parties argue that Hansen's status as attorney of record on the MULTIFIL trademark, as well as his September 1, 2004, letter, are evidence that Hansen continues to represent them.  (*See* Pl. Mem. at 3-4, 9.)

Watermaster does not dispute that Hansen met with Fetter in 1999, counseled Applied Technology in the Trojan Battery patent infringement matter, and was a listed attorney in Applied Technology's MULTIFIL trademark application, but argues that Hansen is not currently counsel to Applied Technology, Fetter & Henderson, or Fetter, that the Moving Parties have failed to establish a substantial relationship between any of Hansen's dealings with the Moving Parties and the claims in this case, and that the motion to disqualify is purely a litigation tactic that must be rejected.  (*See* Brief in Opposition to Motion of Plaintiff and Counter-Claim Defendants To Disqualify William R. Hansen and Lathrop & Gage L.C. as Attorneys for Watermaster of America, Inc., dated Nov. 13, 2007 ("Def. Mem.") (Dkt. 28), at 5-6.)

I.   **APPLICABLE LEGAL STANDARDS**

The decision to grant a motion to disqualify is committed to the sole discretion of the court.  *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).  In considering such a motion, courts balance "'the need to maintain the highest standards of the

profession'" against "'a client's right freely to choose his counsel.'" *Id.* (quoting *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 738 (2d Cir. 1978)). Although courts generally look to the American Bar Association and state disciplinary rules for guidance in determining disqualification motions, courts are not bound by these rules. *Leber Assocs., LLC v. Entm't Group Fund, Inc.*, No. 00 Civ. 3759 (LTS) (MHD), 2001 U.S. Dist. LEXIS 20352, at *5 (S.D.N.Y. Dec. 7, 2001). Moreover, the Second Circuit has repeatedly indicated that these rules "are not to be rigidly applied to force attorney disqualification." *Id.* at *5-6 (citing cases). In part, this is because disqualification is a "drastic measure" that is viewed with disfavor because it impinges on a party's right to employ the counsel of its choice. *First Interregional Advisors Corp. v. Wolff*, 956 F. Supp. 480, 489 (S.D.N.Y. 1997) (internal citations omitted). Accordingly, parties moving for disqualification bear a "heavy burden" and must satisfy a "high standard of proof." *Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C.,* 440 F. Supp. 2d 303, 308-09 (S.D.N.Y. 2006).

The simultaneous representation of clients whose interests are in conflict, as governed by Rule 5-105, is judged by one standard, and the successive representation of clients, as governed by Rule 5-108, is judged by another. *See Monaghan v. SZS 33 Assocs., L.P.*, No. 89 Civ. 4900 (RWS), 1994 U.S. Dist. LEXIS 16054, at *6 (S.D.N.Y. Nov. 9, 1994).

 A. **Simultaneous Representation**

Under Disciplinary Rule 5-105 of the New York Code of Professional Responsibility, a lawyer generally shall not accept or continue multiple employment, "if the exercise of the independent professional judgment on behalf of a client will or is likely to be adversely affected," or if "it would be likely to involve the lawyer in representing differing interests." 22 N.Y. Comp. Codes R. & Regs. § 1200.24(a), (b) (2009).

In a motion to disqualify counsel for simultaneous representation, the movant must show that the adverse representation is ongoing. *Monaghan*, 1994 U.S. Dist. LEXIS 16054, at *6-7. Once such a showing is made, the adverse representation is *prima facie* improper, and the attorney whose representation is challenged must then show that there is no actual or apparent conflict in his loyalties or diminution in the vigor of his representation. *Id*.

### B. Successive Representation

Disciplinary Rule 5-108 prohibits a lawyer from representing a person "in the same or a substantially related matter in which that person's interests are materially adverse" to the interests of a former client or from using any confidences of a former client, without the consent of the former client after full disclosure. 22 N.Y. Comp. Codes R. & Regs. § 1200.27(a). Further, an individual lawyer's conflicts are ordinarily imputed to his firm based on the presumption that "associated attorneys share client confidences." *Hempstead Video, Inc.*, 409 F.3d 127 at 133 (internal citations omitted); *see also* 22 N.Y. Comp. Codes R. & Regs. § 1200.27(b).[2]

For cases involving successive representation, the Second Circuit has established that an attorney may be disqualified from representing a client in a particular case if the movant

---

[2] Section 1200.27(b) states:

> Except with the consent of the affected client after full disclosure, a lawyer shall not knowingly represent a person in the same or substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
>
> > (1)   whose interests are materially adverse to that person; and
> >
> > (2)   about whom the lawyer had acquired [protected] information . . . that is material to the matter.

9

demonstrates the following elements: (1) that the moving party is a former client of the adverse party's counsel; (2) that a substantial relationship exists between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) that the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client. *Regal Mktg. Inc. v. Sonny & Son Produce Corp.*, 01 Civ. 1911 (WK), 2002 U.S. Dist. LEXIS 14069, at *14 (S.D.N.Y. July 31, 2002) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)).

To establish a "substantial relationship," the movant bears the heavy burden of proving that the relationship is "patently clear"; in other words, the movant must demonstrate that the issues involved in the prior and present representations were "identical" or "essentially the same." *Gov't of India*, 569 F.2d at 739-40 (internal citations omitted); *see also Vestron, Inc. v. Nat'l Geographic Society*, 750 F. Supp. 586, 595 (S.D.N.Y. 1990) (denying disqualification motion because movant could not establish that a substantial relationship existed between initial litigation, which involved trademark action, and subsequent litigation, which involved breach of contract).

II.     **THE MOTION TO DISQUALIFY**

    A.     **Hansen's Alleged Simultaneous Representation of Watermaster and the Moving Parties**

As described above, the standard for disqualification depends, in part, on whether an attorney's representation of adverse parties is simultaneous or successive. Thus, the Court must first determine whether Hansen's representation of the Moving Parties "has been terminated and the parameters of such relationship have been fixed." *Cinema 5, Ltd. v. Cinerama, Inc.*, 528

F.2d 1384, 1387 (2d Cir. 1976).  Here, the evidence submitted by the Moving Parties falls short of establishing that Hansen had continued to represent them at the time the instant litigation was commenced in June 2007.

The Moving Parties rely largely on the September 2004 letter from Hansen to Fetter and the corresponding "client file release form," as support for the proposition that Hansen continues to represent Fetter and Fetter & Henderson up to the present time.  (Pl. Mem., at 9.)  Watermaster argues, in opposition, that the letter was sent to all present and former clients as a matter of course, and therefore is not probative of continued representation.  (Hansen Decl., at ¶ 16.)  The letter, which does not define the scope of any such representation or evince any amount paid or due, is not sufficient to show that Fetter or Fetter & Henderson are currently being represented by Hansen.[3]  *See Unique Sports Generation, Inc. v. LGH-III, LLC*, No. 03 Civ. 8324 (JGK) (DF), 2005 U.S. Dist. LEXIS 22133, at *47-*51 (S.D.N.Y. Sept. 30, 2005) (denying plaintiff's disqualification motion under a simultaneous representation analysis where the absence of recent legal bills or a retainer agreement demonstrated that the attorney did not continue to represent the plaintiff through the commencement of the litigation); *Cleverly Minded Ltd. v. Anthony Sicari Apparel Group Indus.*, No. 02 Civ. 4489 (KMW) (FM), 2003 U.S. Dist. LEXIS 855, at *9-11 (S.D.N.Y. Jan. 23, 2003) (denying defendant's motion to disqualify

---

[3] "'Retainer' is the act by which a client engages an attorney to perform legal services . . . .  The authority of an attorney begins with the retainer.  The agreement upon an amount of the retainer and its payment is persuasive evidence of the establishment of an attorney-client relationship."  23 *Williston on Contracts* § 62:2 (4th ed. 2008).  The September 2004 letter does not include a request of payment of any kind and is unclear as to whether it is intended to suggest a new or continued retainer.  As the letter is, at best, equivocal on this point, it does not satisfy the Moving Parties heavy burden to demonstrate that Hansen currently represents them in any regard.

11

plaintiff's counsel where conflicting evidence of alleged payment to plaintiff's counsel did not satisfy the heavy burden required under a simultaneous representation analysis).[4]

Similarly, the evidence presented does not support the notion that Applied Technology is currently represented by Hansen. Hansen was listed as an attorney of record on Applied Technology's application for registration of its MULTIFIL trademark (*see* Def. Mem., at 7), which was successfully registered with the USPTO on June 1, 2004 (*see id*., at 8). As Defendants argue, however, the registration of a trademark is a finite task, which does not constitute ongoing representation. *Leber Assocs.*, 2001 U.S. Dist. LEXIS 20352, at *16. The USPTO "considers a power of attorney to end with respect to a particular application when the mark is registered." 1 *Trademark Manual of Examining Procedure* §§602.01, 602.01(c) (5th ed. 2007).

Subsequent to the filing of this motion, the Moving Parties also submitted to the Court a newsletter, entitled the "In-Court Report," authored by members of Hansen's present firm, Lathrop & Gage, which was purportedly mailed to Fetter on November 7, 2007. (*See* Fetter Reply Decl., at Ex. C.) While Fetter states that there is "absolutely no reason why we would be receiving mail from Mr. Hansen and Lathrop & Gage while we are in litigation with them unless we still are their clients" (Fetter Reply Decl. ¶ 23), this Court finds that a mass-mailed newsletter, which may have also been sent to former or prospective clients as a way to generate business, does not support such a conclusion. The Lathrop & Gage "In-Court Report" newsletter, mailed to Fetter after the commencement of this litigation, does not satisfy the high

---

[4] In *Cleverly Minded*, the defendant submitted evidence of a $2,500 check payable to plaintiff's counsel, as allegedly demonstrating payment for past legal services. *Cleverly Minded*, 2003 U.S. Dist. LEXIS 855, at *9-11. Yet, as the parties made conflicting claims as to the purpose of the check and the recipients of the alleged services, the court found that the evidence did not "even remotely meet[] the [d]efendants' burden." *Id.*

standard of proof needed to disqualify counsel. *See Unique Sports Generation*, 2005 U.S. Dist. LEXIS 22133, at *47-*51; *Cleverly Minded Ltd.*, 2003 U.S. Dist. LEXIS 855, at *9-11.

    B.    <u>Alleged Successive Representation</u>

The Moving Parties have adequately demonstrated that Hansen formerly served as their counsel, at least on certain matters.[5] Further the Court accepts that Hansen had access to relevant privileged information in the course of the prior representation. (*See* n.5.) Whether Hansen should be disqualified thus turns on whether a substantial relationship exists between the subject matter of his prior representation of the Moving Parties and the issues in the present lawsuit. *Regal Mktg.*, 2002 U.S. Dist. LEXIS 14069, at *14.

The Moving Parties must demonstrate that the substantial relationship is "patently clear" and that the issues involved in Hansen's prior representation of the Moving Parties and the issues in the present lawsuit are "identical" or "essentially the same." *Gov't of India*, 569 F.2d at 739-40; *see also Vestron, Inc.*, 750 F. Supp. at 595. This standard "requires a determination with

---

[5] There is some dispute as to whether Hansen represented Fetter at the 1999 meetings or was merely present as Watermaster's representative. According to Fetter, he paid Hansen $6,567.60 for representing him in connection with various aspects of his business activities, tax matters, and potential immigration, and Hansen's December 1999 billing statement evidences that representation. (*See* Fetter Decl., at ¶ 6; Hansen Decl., at Ex. F.) The billing statement, however, is addressed to Morris, of "Watermaster of America, Inc.," not to Fetter, and the statement is for the amount of $9,725.56, not $6,567.60. (*Id*.) While the Moving Parties argue that the billing statement was "improperly provided to Mr. Morris" and is "documentary proof . . . consistent only with Mr. Fetter's testimony" (Reply Brief in Support of Motion of Plaintiff and Counterclaim Defendants to Disqualify Counsel of Record for Defendant, dated Nov. 19, 2007 ("Pl. Reply Mem.") (Dkt. 31), at 5), Watermaster argues that the statement actually demonstrates "that Mr. Morris and Watermaster were Mr. Hansen's clients – not Mr. Fetter" (Def. Mem., at 12). Overall, the Court credits Fetter's statements in his *in camera* declaration that he believed Hansen was acting as his attorney during the 1999 meetings, and that he disclosed privileged information to Hansen based on that belief.

respect to whether the facts which were necessary to the first representation are necessary to the present litigation." *Regal Mktg.*, 2002 U.S. Dist. LEXIS 14069, at *24.

Focusing on the 1999 meetings regarding Fetter's potential relocation, the Moving Parties assert that "[t]he facts common to this case and to Mr. Hansen's prior representations . . . are the business dealings, tax matters, and 'off shore' business with [Watermaster], as summarized in the billing statement issued by Mr. Hansen on December 21, 1999." (Pl. Mem., at 12.)[6] Specifically, the Moving Parties claim that facts learned by Hansen from Fetter during the 1999 meetings appear in paragraphs 41, 42, 43, 44, 48, 49, 50, 51, 54, 55, 56, and 58 of Watermaster's counterclaims and third-party claims. (*Id.* (citing Am. Answer).)  In addition, as noted above, Fetter has now provided, for *in camera* review, a detailed account of the information he imparted to Hansen at the 1999 meetings.  Essentially, the Moving Parties argue that Watermaster would not have had knowledge of the Moving Parties' internal business structures, but for Hansen's attendance at these meetings.

Some of the facts that were apparently discussed at the 1999 meetings, regarding the internal business structures of Applied Technology and Fetter & Henderson, do appear to be incorporated into Watermaster's counterclaims and third-party claims, as pleaded.  Facts regarding the structure of the Moving Parties' internal business structures, however, are not "necessary" to Watermaster's counterclaims, but rather are provided as background information to the counterclaims.  *See Regal Mktg.*, 2002 U.S. Dist. LEXIS 14069, at *14 (attorney's regulatory work on behalf of defendants, despite having focused on the joint business

---

[6] The Moving Parties make no argument that the prior patent and trademark matters bear any relation to this action, and the Court notes that nothing in the record would support such an argument.

arrangement between them, was not substantially related to the action before the court); *Hickman v. Burlington Bio-Medical Corp.*, 371 F. Supp. 2d 225, 231 (E.D.N.Y. 2005) (finding no substantial relationship between action before the court, which involved an employee's claim for unpaid commissions, and four prior matters in which attorney represented movant corporation); *Vestron*, 750 F. Supp. at 595 (no substantial relationship between prior trademark action and current breach of contract action, despite attorney's familiarity with movant's general litigation strategy); *United States Football League v. National Football League*, 605 F. Supp. 1448, 1459 (S.D.N.Y. 1985) ("attorney's knowledge of the business plans, economic organization, prospective market position and other such background information about the movant becomes relevant" in subsequent antitrust litigation where movant's market behavior was an essential issue).

The facts that are "necessary" to Watermaster's counterclaims for breach of contract, breach of implied warranty, tortious interference with advantageous business relationships, and defamation, are those facts that pertain to Watermaster's own business interactions with the Moving Parties, as to which Watermaster has direct knowledge. (*See, e.g.*, Am. Answer, at ¶¶ 54-59, 61-66, 68, 70-75, 77-78.)  Further, to the extent that any information regarding the Moving Parties' internal business structures may be necessary to Watermaster's counterclaims, Watermaster has explained that it has an independent basis for being familiar with the relevant facts.  For example, Watermaster has alleged that, since the mid-1990s, when it purchased battery watering materials from Applied Technology, it was invoiced for its purchases by Fetter, from Fetter & Henderson's location in South Africa, although the invoices were printed on Applied Technology's letterhead. (*See* Am. Answer, at ¶ 50.)  In addition, according to

Watermaster, when it received the materials it had ordered, the air waybills indicated that the shipments were made by Fetter & Henderson, from South Africa. (*See* Am. Answer, at ¶ 51.)

Considering the totality of the parties' submissions, this Court finds that the Moving Parties have failed to demonstrate that the issues in Hansen's prior representation of them are "identical" to or "essentially the same" as the issues in the instant action, in that facts necessary to the first representation are necessary to the present litigation. Accordingly, it is not "patently clear" that a substantial relationship exists between Hanson's prior representation of the Moving Parties and his current representation of Watermaster, and, as a result, the Moving Parties' have not satisfied the "high standard of proof" needed to disqualify counsel under a successive representation analysis. *Vestron*, 750 F. Supp. at 595.

## CONCLUSION

For all of the foregoing reasons, the Moving Parties' motion for disqualification is DENIED.

Dated: New York, New York
       March 26, 2009

                                      SO ORDERED

                                      _____
                                      DEBRA FREEMAN
                                      United States Magistrate Judge

Copies to:

Bruce D. Johnson (BJ0375)
Johnson & Associates
950 Third Avenue, Suite 2602
New York, New York 10022

William R. Hansen, Esq. (WH-9446)
Bernadette McGlynn Reilly (BR-4117)
Thomas J. FitzGerald, Esq. (TF-2426)
LATHROP & GAGE L.C.
230 Park Avenue, Suite 1847
New York, New York 10169